UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD FOY, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:22-CV-00351 |
| v. | (MEHALCHICK, M.J.) |
| ENCOMPASS HOME AND AUTO INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM**

Plaintiffs Ronald Foy and Gwen Foy (collectively, "Plaintiffs") initiated this action by filing a complaint in the Court of Common Pleas of Luzerne County on February 7, 2022, against Defendant Encompass Home and Auto Insurance Company ("Encompass"). (Doc. 1-3). On March 9, 2022, Encompass removed this action to the District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1441, *et seq.* (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 9). Presently before the Court are a number of discovery disputes. (Doc. 24; Doc. 25). The parties appeared before the Court in a telephonic discovery call on July 31, 2023. The Court will now address each issue in turn.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On February 7, 2022, Plaintiffs initiated this action by filing the original complaint in the Court of Common Pleas of Luzerne County against Encompass. (Doc. 1-3). Plaintiffs assert claims for breach of contract (Count I) and a violation of Pennsylvania's Bad Faith Statute, 42 Pa. Cons. Stat. § 8371 (Count II). (Doc. 1-3). According to the complaint, as of

June 11, 2018, Encompass was the personal automobile insurance and underinsurance carrier for Plaintiffs, who purchased their policy for insurance through Robert J. Bertram & Sons Insurance and were living in Luzerne County at the time of the collision at issue here. (Doc. 1-3, ¶ 4). On June 11, 2018, Ronald Foy was involved in a motor vehicle collision while driving a vehicle owned by his employer, the City of Wilkes-Barre, when a third-party driver, Alexis Yeager, rear-ended Ronald Foy's vehicle, which was stopped at a red light. (Doc. 1-3, ¶ 5). As a result of this accident, Ronald Foy alleges that he sustained economic loss in excess of $1 million. (Doc. 1-3, ¶ 9). Following the crash, Plaintiffs allege that they placed Encompass on timely notice of an underinsured motorist ("UIM") claim, but contend Encompass has failed to fully and fairly evaluate Plaintiffs' claims for damages. (Doc. 1-3, at ¶¶ 26-28). Plaintiffs allege that Encompass has violated its obligations under Plaintiffs' policy of insurance and breached its contract with Plaintiffs, and acted in bad faith. (Doc. 1-3).

On March 9, 2022, Encompass removed the action to the Middle District of Pennsylvania. (Doc. 1). On March 16, 2022, Encompass filed an answer to the complaint. (Doc. 6). The parties subsequently engaged in discovery. The discovery disputes have been fully briefed and are ripe for disposition. (Doc. 19; Doc. 21; Doc. 24; Doc. 25; Doc. 26; Doc. 27).

**II.    STANDARD OF REVIEW**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. *Marroquin-Manriquez v. I.N.S.*, 699

F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.,* 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing *Scott Paper Co. v. United States*, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *see also Hasbrouck v. BankAmerica Hous. Servs.*, 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); *EEOC v. Mr. Gold, Inc.*, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).
>
> *Halsey v. Pfeiffer,* No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

> *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>
> Fed. R. Civ. P. 26(b)(1).

**III.  DISCUSSION**

Plaintiffs request the Court conduct an in-camera review of the unredacted claims file and claims log of Encompass in order to determine whether an unredacted version shall be produced. (Doc. 24, at 1). In addition, Plaintiffs request that Encompass's objections to the following discovery requests by stricken whereby mandating that Encompass provide full and complete copies to the same: Request for Production of Documents: 3 (sic), 6, 7, 19, 21; Interrogatories: 1, 3, 4, 6, 7, 8, 13, 14, 15, 16, 20, 23, 24, 25. (Doc. 24, at 1). In opposition, Encompass contends it has produced all of the non-privilege documents in its claim file, along with a privilege log, and maintains that the only documents that Encompass withheld from production contain opinion work product or information that is subject to the attorney-client privilege. (Doc. 25, at 1). Encompass maintains that the work product doctrine protects against the discovery of its mental impressions, opinions, and conclusions regarding the value and merits of Plaintiffs' UIM claim, because the UIM claim is ongoing. (Doc. 25, at 1-2; Doc. 27, at 1-2). Conversely, Plaintiffs argues that "[a]llowing permanent redaction of all the reasons, strategy, and aforethought given by representatives of [Encompass] in failing to pay any UIM benefits to the Plaintiffs would be contrary to public policy." (Doc. 26, at 1). In response, Encompass asserts that Plaintiffs' requests are premature as there has not been a decision that they are entitled to UIM benefits, noting that "[o]ne the UIM claim is resolved, opinion work regarding that claim will be discoverable." (Doc. 27, at 1-2, n.1). However, Encompass reiterates that the attorney-client communications remain protected by privilege because the type of discovery here includes settlement evaluations, strategy and tactics, and an attorney's advice regarding how to defend an ongoing claim for coverage. (Doc. 27, at 1).

### A. LEGAL FRAMEWORK

Initially, the Court notes that Plaintiffs claim Encompass breached the UIM policy. (Doc. 1-3). To establish a breach of contract claim in Pennsylvania, one must prove: "(1) the existence of a contract, including its essential terms[;] (2) a breach of a duty imposed by the contract[;] and (3) resultant damages." *McShea v. City of Phila.,* 995 A.2d 334, 340 (Pa. 2010). Plaintiffs further claim that Encompass's conduct in investigating their claim constitutes bad faith. To recover under the bad faith statute, one must show, by clear and convincing evidence: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir. 1997) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); *Kojsza v. Scottsdale Ins. Co.,* Civ. No. 3:12–cv–1602, 2014 WL 198569, *6 (M.D. Pa. Jan. 15, 2014) (citing *Post v. St. Paul Travelers Ins. Co.,* 691 F.3d 500, 523 (3d Cir. 2012)) ("Bad faith must be proven by clear and convincing evidence.").

Actionable bad faith encompasses behavior beyond the denial of a claim without a reasonable basis, including an insurer's investigation of a claim. "[T]he broad language of [S]ection 8371 was designed to remedy all instances of bad faith conduct by an insurer . . . . Therefore, . . . [a]n action for bad faith may also extend to the insurer's investigative practices." *Hollock v. Erie Ins. Exch.,* 842 A.2d 409, 415 (Pa. Super. Ct. 2004) (internal quotation marks and citations omitted). Implicit in the statute is "the requirement that the insurer properly investigate claims prior to refusing to pay the proceeds of the policy to its insured." *Bombar v. West Am. Ins. Co.,* 932 A.2d 78, 92 (Pa. Super. Ct. 2007).

5

The insurer may defeat a claim of bad faith by "showing that it had a reasonable basis for its actions." *Post,* 691 F.3d at 522. Even questionable conduct giving the appearance of bad faith is insufficient to establish bad faith so long as the insurer had a reasonable basis to deny coverage. *Post*, 691 F.3d at 523.

1. **Work Product Doctrine**

The work product privilege is a creature of federal law, *see* Fed. R. Civ. P. 26(b) (3)(A), and "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003). As the Third Circuit has explained:

> The purpose of the work-product doctrine differs from that of the attorney-client privilege . . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used again their clients.

*Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427-28 (3d Cir. 1991).

Furthermore,

> The doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (footnote omitted).

Given these animating principles, Rule 26(b)(3) shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The rule also establishes two categories of protected work product: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

However, the Court must also consider the following. First, while recognizing the value served by these privileges, courts must be mindful that the privileges obstruct the truth-finding process and should, therefore, be "applied only where necessary to achieve its purpose." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007); *see also Westinghouse Elec. Corp.*, 951 F.2d at 1423. Second, when addressing legal questions regarding whether the attorney client or work product privileges apply to particular documents, we are cautioned to eschew any categorical approach which cloaks or rejects the privilege in a wholesale fashion without regard to the specific content of particular documents. Instead, "claims of . . . privilege must be asserted document by document, rather than as a single, blanket assertion." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990).

7

### 2. Attorney-Client Privilege

The attorney-client privilege is meant to facilitate "full and frank communication between attorneys and their clients." *Wachtel*, 482 F.3d at 231. The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also In re Ford Motor Co.*, 110 F.3d 954, 965 n.9 (3d Cir. 1997) (communication made by client and an attorney are privileged if made "for the purpose of securing legal advice."); *United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980).

The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. However, the privilege extends only to the disclosure of the communications, and does not extend to

disclosure of the underlying facts conveyed in those communications. *Upjohn*, 449 U.S. at 385.

While recognizing the value served by the privilege, courts must also be mindful that the privilege obstructs the truth-finding process and should, therefore, be "applied only where necessary to achieve its purpose." *Wachtel*, 482 F.3d at 231; *see also Westinghouse Elec. Corp.*, 951 F.2d at 1423. Therefore, because the purpose of the privilege is to protect and promote the "dissemination of sound legal advice," it applies only to communication conveying advice that is legal in nature, as opposed to where the lawyer is providing non-legal, business advice. *Wachtel*, 482 F.2d at 231; *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) (stating that the privilege is inapplicable where the legal advice is incidental to business advice); *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 643 (S.D.N.Y. 1987) ("The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice . . . .").

Federal courts are further required to assess the application of the privilege on a case-by-case basis. Thus, "Rule 501 [of the Federal Rules of Evidence] requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication." *Wachtel*, 482 F.3d at 230; *see also Upjohn*, 449 U.S. at 386, 396-97. In addition, the party asserting the privilege bears the burden of providing that it applies to the communication at issue. *In re Grand Jury*, 603 F.2d 469, 474 (3d Cir. 1979).

B. APPLICATION TO DOCUMENTS AT ISSUE

Based on the record before the Court, the Court cannot determine whether the attorney-client privilege applies to the documents at issue. It is often critically important that any privilege log adequately outline the basis of the privilege claim. On this score, the Court has described the legal requisites of a valid privilege log in the following terms:

> The privilege log should: identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between ... individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected. *Bowne*, 150 F.R.D. at 474 (citations omitted); *see also von Bulow*, 811 F.2d at 146; *In re Grand Jury Subpoena Dtd. Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984). *United States v. Constr. Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).

*Farkas v. Rich Coast Coffee, Corp.*, No. 1:14-CV-272, 2016 WL 4611427, at *4 (M.D. Pa. Sept. 6, 2016).

The necessity of an adequate privilege log is particularly important when considering discovery demands and work product claims like those made here which entail the entirety of an insurance claims file. With respect to such insurance files, it is well-settled that:

> [M]aterials prepared in the ordinary course of business are not protected. *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993); *see also Mattison v. Imbesi*, 1998 WL 720061, at *2 (E.D. Pa. Oct. 6, 1998)("it is equally clear that Rule 26(b)(3) was not intended to protect all insurance claim files from discovery")(citation and internal quotation marks omitted). Because insurance companies are required to evaluate claims made by their insureds in the ordinary course of their business, "discovery disputes involving an insurance company's claims file often present problems for the parties." *Borgia v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4375643, at *3 (E.D. Pa. Sept. 3, 2014)(citing *Garvey v. Nat'l Grange Mut. Ins. Co.*, 167 F.R.D. 391, 394 (E.D. Pa. 1996)). An insurance company "cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate[,] and make a decision with respect to claims made on

> it . . . ." *Shaffer v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 931101, at *2 (M.D. Pa. Mar. 10, 2014) (citation omitted); *Robertson*, 1999 WL 179754, at *3 (same). Nevertheless, . . . "[a]t some point in its investigation . . . an insurance company's activity shifts from mere claims evaluation to an anticipation of litigation." *Garvey*, 167 F.R.D. at 394.
>
> *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, No. CV 19-4016, 2021 WL 229400, at *7 (E.D. Pa. Jan. 22, 2021).

Given the fact-specific nature of this inquiry, these determinations of relevance and privilege cannot be made in the abstract. Rather, they must entail an informed evaluation of the content and factual context of the disputed, and arguably privileged, documents. Recognizing these simple truths, the Court will order Encompass to provide the Court with: (1) redacted and unredacted versions of Plaintiffs' UIM file; (2) documents that Encompass submits are not discoverable pursuant to the attorney-client privilege; and (3) a privilege log. After the Court conducts an *in camera* review of these documents, it will determine whether Encompass properly asserted these documents are protected by the work product doctrine and/or the attorney-client privilege. Thereafter, the Court will rule on the parties' discovery matters.

    C.  <u>Encompass has not waived attorney-client privilege.</u>

The Court does not find persuasive Plaintiffs' argument that Encompass has waived the attorney-client privilege as a natural consequence of asserting affirmative defenses that its conduct was reasonable and in compliance with applicable Pennsylvania law and regulations. (Doc. 24, at 3-4). In support of this argument, Plaintiffs rely on the unpublish decision of *Jones v. Nationwide Insurance Co.*, No. 3:98-CV-2108, 2000 WL 1231402 (M.D. Pa. July 20, 2000), in which the Court found that the insurer that was defending against a bad faith claim by asserting that the insurer complied with the laws and engaged in appropriate conduct had, in

11

effect, defended its conduct on the advice of counsel. *Jones*, 2000 WL 1231402, at *2. Having so found in that case, the court concluded that the defendant's affirmative defense effectively waived the privilege. *Jones*, 2000 WL 1231402, at *3.

Essentially, even though the defendant in the instant case has not, in fact, specifically pled that it relied upon the advice of counsel, and asserted this precise defense to the claims in this case, Plaintiffs argue that the Court should nevertheless follow *Jones* and conclude that Plaintiffs should obtain discovery of any document in which the advice of counsel is potentially at issue simply because Encompass has defended its conduct as lawful and in compliance with state regulations. (Doc. 243-4). Assuming that *Jones* stands for such a broad proposition of law, the Court declines to find it applicable in this case. Instead, the Court finds persuasive the Court's reasoning in *Walter v. Travelers Personal Ins. Co.*, No. 4:12-CV-346, 2013 WL 2252729, at *6 (M.D. Pa. May 22, 2013), in which the Court found that merely asserting a defense that the defendant complied with the law is not tantamount to asserting an "advice of counsel" defense that might result in a broad waiver of the privilege. The Court explained:

> In *George v. Wausau Insurance Company*, Civ. A. No. 99–CV–6130, 2000 U.S. Dist. LEXIS 16813, at *8, 2000 WL 276915 (E.D. Pa. March 13, 2000), the district court found language similar to that set forth in the instant defendant's answer and affirmative defenses did not constitute an "advice of counsel" defense that resulted in the forfeiture of the attorney-client privilege:
>
> > Advice of counsel, . . . is not in issue simply because it is relevant or because the lawyer's advice affected the client's state of mind with respect to a relevant matter. *Rhone–Poulenc [Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 863 (3d Cir.1994) ]. Rather, advice of counsel is raised only when the client asserts a claim or defense and attempts to prove that claim or defense by disclosing or describing an attorney-client communication. *Id.* This may occur when the party asserts reliance on the advice of counsel as an affirmative defense. *Id.* Courts rely on the language of the asserted affirmative defenses and the nature of the causes of action raised in the suit when determining waiver of the privilege. *Id.*

12

Other courts are in accord. *See, e.g., Sayre Enters. v. Allstate Ins. Co.,* Civ. A. No. 5:06cv00036, 2006 U.S. Dist. LEXIS 89097, *11, 2006 WL 3613286 (W.D. Va. Dec. 11, 2006) (following *George,* and expressly declining to follow *Jones* ); *McCrink v. Peoples Benefit Life Ins. Co.,* Civ. A. No. 2:04CV01068, 2004 U.S. Dist. LEXIS 23990, at *8, 2004 WL 2743420 (E.D. Pa. Nov.30, 2004); *Quaciari v. Allstate Ins. Co.,* Civ. A. No. 97–2028, 1997 U.S. Dist. LEXIS 13834, 1997 WL 570921, at *1 (E.D. Pa. Sept. 3, 1997) (attorney-client privilege applies to communications between insurance company and in-house counsel concerning claim that later becomes basis for bad-faith litigation); *Fidelity & Deposit Co. v. McCulloch,* 168 F.R.D. 516, 520 (E.D. Pa. 1996). "By preventing a naked allegation of bad faith from eviscerating the attorney-client privilege, these courts preserve the attorney-client privilege, and the public and private interests that the attorney-client privilege serves, in the context of insurance litigation." *McCrink,* Civ. A. No. 2:04CV01068, 2004 U.S. Dist. LEXIS 23990, at *8, 2004 WL 2743420. We are persuaded by the reasoning in these decisions, and similarly agree that in this case the defendant's general defense that it conducted itself lawfully does not negate its ability to protect from disclosure confidential attorney-client communications. Accordingly, we do not embrace the plaintiff's argument that the defendant has waived the attorney-client privilege in this case with respect to the documents that are the subject of the instant dispute.

Here, the Court is persuaded by the reasoning set forth in *Walter*, and finds that Encompass's affirmative defenses that it conducted itself in a reasonable manner in accordance with Pennsylvania regulations did not waive the protections afforded by the attorney-client privilege. Therefore, the Court rejects Plaintiffs' argument that Encompass has waived the attorney-client privilege with respect to the documents that are the subject of the instant discovery dispute.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Encompass shall provide the Court with: (1) redacted and unredacted versions of Plaintiffs' UIM file; (2) documents that Encompass submits are not discoverable pursuant to the attorney-client privilege; and (3)

a privilege log. Upon production, the Court will conduct an *in camera* review of the documents that have been withheld or redacted.

An appropriate Order follows.

                                                                                     **BY THE COURT:**

**Date:  October 10, 2023**                            *s/ Karoline Mehalchick*
                                                                                      **KAROLINE MEHALCHICK**
                                                                                      **Chief United States Magistrate Judge**