UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD FOY, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:22-CV-00351 |
| v. | (MEHALCHICK, M.J.) |
| ENCOMPASS HOME AND AUTO INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM**

I. **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Ronald Foy and Gwen Foy (collectively, "Plaintiffs") initiated this action by filing a complaint in the Court of Common Pleas of Luzerne County on February 7, 2022, against Defendant Encompass Home and Auto Insurance Company ("Encompass"). (Doc. 1-3). Plaintiffs assert claims for breach of contract (Count I) and a violation of Pennsylvania's Bad Faith Statute, 42 Pa. Cons. Stat. § 8371 (Count II). (Doc. 1-3). According to the complaint, as of June 11, 2018, Encompass was the personal automobile insurance and underinsurance carrier for Plaintiffs, who purchased their policy for insurance through Robert J. Bertram & Sons Insurance. (Doc. 1-3, ¶ 4).

On June 11, 2018, Ronald Foy was involved in a motor vehicle collision while driving a vehicle owned by his employer, the City of Wilkes-Barre. (Doc. 1-3, ¶ 5). A third-party driver, Alexis Yeager, rear-ended Ronald Foy's vehicle which was stopped at a red light. (Doc. 1-3, ¶ 5). Plaintiffs were living in Luzerne County at the time. (Doc. 1-3, ¶ 4). As a result of the collision, Ronald Foy alleges that he sustained economic loss in excess of $1

million. (Doc. 1-3, ¶ 9). Following the incident, Plaintiffs allege that they placed Encompass on timely notice of a UIM claim but that Encompass has failed to fully and fairly evaluate Plaintiffs' claims for damages. (Doc. 1-3, at ¶¶ 26-28). Plaintiffs allege that Encompass has violated its obligations under Plaintiffs' policy of insurance, breached its contract with Plaintiffs, and acted in bad faith. (Doc. 1-3).

On March 9, 2022, Encompass removed this action to the District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1441, *et seq.* (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 9).

The Court previously addressed a number of discovery disputes in a Memorandum and an Order dated October 10, 2023. (Doc. 24; Doc. 25; Doc. 28; Doc. 29). Therein, the Court concluded it needed more information to determine the applicability of the privileges alleged by Encompass. (Doc. 28; Doc. 29). The Order directed Encompass to submit to the Court (1) redacted and unredacted versions of Plaintiffs' underinsured motorist ("UIM") file; (2) documents that Encompass submits are not discoverable pursuant to the attorney-client privilege; and (3) a privilege log. (Doc. 28; Doc. 29). On October 20, 2023, Encompass furnished these documents. The Court has conducted an *in camera* review of these submissions and has concluded that Encompass's objections to the production of these documents shall be **SUSTAINED** in part and **OVERRULED** in part.

II. STANDARD OF REVIEW

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be

disturbed only upon a showing of abuse of that discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

> *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

### III. DISCUSSION

#### A. LEGAL FRAMEWORK

##### 1. Attorney Work Product Doctrine

The attorney work product privilege is a creature of federal law, *see* Fed. R. Civ. P. 26(b)(3)(A), and "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003). As the Third Circuit has explained:

> The purpose of the work-product doctrine differs from that of the attorney-client privilege . . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in

anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427-28 (3d Cir. 1991).

Furthermore,

The doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (footnote omitted).

Given these animating principles, Rule 26(b)(3) shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The rule also establishes two categories of protected work product: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

4

However, the Court must also consider the following. First, while recognizing the value served by these privileges, courts must be mindful that the privileges obstruct the truth-finding process and should, therefore, be "applied only where necessary to achieve its purpose." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007); *see also Westinghouse Elec. Corp.*, 951 F.2d at 1423. Second, when addressing legal questions regarding whether the attorney-client or work product privileges apply to particular documents, we are cautioned to eschew any categorical approach which cloaks or rejects the privilege in a wholesale fashion without regard to the specific content of particular documents. Instead, "claims of . . . privilege must be asserted document by document, rather than as a single, blanket assertion." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990).

2. **Attorney-Client Privilege**

The attorney-client privilege is meant to facilitate "full and frank communication between attorneys and their clients." *Wachtel*, 482 F.3d at 231. The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also In re Ford Motor Co.*, 110 F.3d 954, 965

5

n.9 (3d Cir. 1997) (communication made by client and an attorney are privileged if made "for the purpose of securing legal advice."); *United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980).

The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. However, the privilege extends only to the disclosure of the communications, and does not extend to disclosure of the underlying facts conveyed in those communications. *Upjohn*, 449 U.S. at 385.

While recognizing the value served by the privilege, courts must also be mindful that the privilege obstructs the truth-finding process and should, therefore, be "applied only where necessary to achieve its purpose." *Wachtel*, 482 F.3d at 231; *see also Westinghouse Elec. Corp.*, 951 F.2d at 1423. Therefore, because the purpose of the privilege is to protect and promote the "dissemination of sound legal advice," it applies only to communication conveying advice that is legal in nature, as opposed to where the lawyer is providing non-legal, business advice. *Wachtel*, 482 F.3d at 231; *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) (stating that the privilege is inapplicable where the legal advice is incidental to business advice); *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 643 (S.D.N.Y. 1987) ("The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice . . . .").

Federal courts are further required to assess the application of the privilege on a case-by-case basis. Thus, "Rule 501 [of the Federal Rules of Evidence] requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication." *Wachtel*, 482 F.3d at 230; *see also Upjohn*, 449 U.S. at 386, 396-97. In addition, the party asserting the privilege bears the burden of providing that it applies to the communication at issue. *In re Grand Jury*, 603 F.2d 469, 474 (3d Cir. 1979).

B. APPLICATION TO DOCUMENTS AT ISSUE

1. **Documents Nos. 000565; 000566; 004515, 004544; 004545; 004546; 004548; 004549; 004550; 004558; 004798; 004816; 004817; 004942; 004944; 004945; 004950; 004951; 004952; 004953; 004954; 004955; 004956; 004957; 005760; 005761; and the relevant sections pertaining to expert invoices in 100005; 100006; 100007; 100008; 100009; 100013; 100015; and 100016.**

In their privilege log, Encompass lists each of these documents as an "Invoice" and describes them to be "communications with expert regarding review."[1] Upon review, each of the listed documents appears to be an invoice sent to Encompass by an expert witness requesting compensation for their services. Encompass argues these documents are protected by the attorney work product privilege. Federal Rule of Civil Procedure 26(b) protects communications between counsel and potential expert witnesses. However, this exception does not extend to "communications regarding compensation for the expert's study or

---

[1] Documents Nos. 100005; 100006; 100007; 100008; 100009; 100013; 100015; and 100016 are all a part of a chart of insurance claim notes. Encompass classifies each of the relevant entries as an "expert invoice." Each note indicates payment to an expert, including the amount paid. Documents Nos. 000565, 000566, and 004515 are listed as "Budgets" and described to be "attorney communications with expert regarding expert review." These documents are charts detailing the costs associated with the expert's services.

7

testimony[.]" Fed. R. Civ. P. 26(b)(4)(C)(i). This information is important for parties to disclose as "to permit full inquiry into [] potential sources of bias." *Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 2:17-CV-01023-JFC, 2019 WL 2501471, at *5 (W.D. Pa. Mar. 19, 2019) (quoting the Advisory Note to the 2010 Amendments to Fed. R. Civ. P. 26).

Because these documents directly relate to Encompass's experts' compensation, they must be produced, and Encompass's objection is therefore **DENIED**. However, consistent with other Pennsylvania federal courts, the Court will allow Encompass to turn over redacted versions the invoices so long as the experts' billing rates and total compensation are shown.[2] *See Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-CV-513, 2021 WL 3403470, at *8 (E.D. Pa. Aug. 3, 2021) (requiring expert invoices showing the expert's rate and total billing to be produced but allowing counsel to redact superfluous information); *see also Sherwin-Williams Co.*, 2019 WL 2501471, at *4-5.

### 2. Document No. 004907

Encompass lists Document No. 004907 as an "Email" and describes it as "communications with counsel" in their privilege log. The document itself, however, contains no correspondence and is titled "SIU Auto Casualty Referral Guide." The document appears to be some sort of form, although in this case the form is not filled out. Encompass claims this

---

[2] Prior to Rule 26 being amended in 2010, courts routinely required parties to produce entire, unredacted expert invoices. *See e.g., EEOC v. Walmart*, No. CV 01-339-KKC, 2008 WL 11346464, at *3 (E.D. Ky. Aug. 5, 2008); *see also e.g.*, *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460 (E.D. Pa. 2005). However, because Rule 26's 2010 Amendment was intended to further protect communications between lawyers and experts, there has been a shift towards requiring disclosure only of the billing rate and total compensation of expert witnesses. *See Sherwin-Williams Co.*, 2019 WL 2501471, at *4-5; *see also Penn Eng'g & Mfg. Corp.*, 2021 WL 3403470, at *8.

document is not discoverable because it is protected by attorney-client privilege. However, Encompass has not specified how this document relates to any communication with its client. Accordingly, Encompass has not met its burden of establishing that attorney-client privilege applies, and the Court finds that this document is not entitled to any protection under the attorney-client privilege. Encompass's objection as it relates to Document No. 004907 is **DENIED**.

### 3. All Other Documents

Encompass claims the remaining documents are protected by either attorney-client privilege or attorney work-product privilege. With respect to these documents, Encompass's objection is **SUSTAINED**. Based upon the document descriptions in the privilege log, and the Court's *in camera* review of each document, it is clear that these documents constitute work-product, prepared by Encompass's counsel to assist in the defense of this matter, or communications between Encompass and its' counsel, both of which unquestionably constitutes litigation. Plaintiffs have failed to demonstrate any "rare and exceptional circumstances" that would justify the disclosure of any of these documents.

## IV. CONCLUSION

For the foregoing reasons and in accordance with the Court's *in camera* review, Encompass's objections are **DENIED** in part as they relate to Documents Nos. 000565; 000566; 004515, 004544; 004545; 004546; 004548; 004549; 004550; 004558; 004798; 004816; 004817; 004907; 004942; 004944; 004945; 004950; 004951; 004952; 004953; 004954; 004955; 004956; 004957; 005760; 005761, and the relevant sections relating to expert invoices in documents 100005; 100006; 100007; 100008; 100009; 100013; 100015; and 100016.

Encompass shall produce these documents in accordance with the specifications provided within this Memorandum. For all the other documents at issue, Encompass's objections are **SUSTAINED**.

      An appropriate Order follows.

                                        **BY THE COURT:**

**Date: January 24, 2024**                        *s/ Karoline Mehalchick*
                                                **KAROLINE MEHALCHICK**
                                                **Chief United States Magistrate Judge**